**Esther R. KOCIEMBA and William J. Kociemba, Plaintiffs,**

v.

**G.D. SEARLE & CO., Defendant.**

**Civ. No. 3–85–1599.**

United States District Court, D. Minnesota, Third Division.

Feb. 12, 1988.

Michael V. Ciresi, Roger P. Brosnahan, David L. Suggs, Roberta Walburn of Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiffs.

Michael Berens, Madge S. Thorsen, Paula D. Osborn of Oppenheimer, Wolff & Donnelly, Minneapolis, Minn. and Paul Strain of Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the Court is defendant's motion in limine to exclude a 1976 Food and Drug Administration ("FDA") Task Force Report ("report") critical of defendant's laboratory and animal testing procedures. On October 23, 1987, the Court, after a hearing on the matter, took it under advisement.

Defendant seeks to exclude the report because 1) it is irrelevant to any material issue in this case; 2) it constitutes inadmissible character evidence; 3) its prejudicial effect on the factfinder would substantially outweigh its probative value; and 4) it is inadmissible hearsay.

After careful review, the Court grants defendant's motion to exclude the report from plaintiffs' case-in-chief. The court withholds judgment at this time as to whether it may be used for impeachment and/or rebuttal purposes.

## FACTS

In 1975, a Senate subcommittee held hearings regarding the clinical testing practices in the pharmaceutical industry. Serious allegations regarding Searle's testing procedures surfaced at those hearings. As a result, the FDA investigated Searle's laboratory animal testing and data reporting procedures.

FDA investigators and scientists conducted a three month on-site investigation at various Searle laboratories located throughout the country. A steering committee comprised of FDA bureau chiefs and FDA Commissioner, Dr. Alexander Schmidt, oversaw the investigation.

In the Fall of 1976, the task force investigated 25 different animal studies conducted by Searle between 1968 and 1975. These studies were representative of all of Searle's animal studies during that period. However, the only Cu–7 related study included in the task force investigation was a 1971–1972 copper toxicity study of laboratory rats.

On March 24, 1976, the FDA issued an 84–page report highly critical of Searle. The report concluded, in part, that the investigation

raises serious questions regarding the reliability and the scientific integrity of the studies submitted in support of the products investigated.

Searle Investigation Task Force Report of Preclinical (Animal) Studies of G.D. Searle Company, Skokie, Illinois, p. 8.

The report further recommended that the Justice Department initiate grand jury proceedings against Searle to "identify more particularly the nature of the violations and to identify all those responsible for such violations." *Id.* at p. 10.

FDA Commissioner Schmidt accepted the findings of the task force and presented the report to the Senate subcommittee on April 8, 1976.

In response to the report, the United States Attorney for the Northern District of Illinois initiated a grand jury investigation of Searle. Fifteen months later, the grand jury proceedings were terminated. No charges have ever been brought against Searle or any of its employees as a result of the report.

## ANALYSIS

Relevant evidence is generally admissible at trial. Fed.R.Evid. 402. "Relevant evidence" is evidence

having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.

Fed.R.Evid. 401.

Plaintiffs contend that the FDA report is relevant for several reasons. First, they assert that the report's findings regarding the 52–week copper toxicity study, coupled with other evidence of Searle's misconduct in Cu–7 related studies, is relevant evidence that Searle negligently tested the Cu–7. Second, plaintiffs assert that the report's mention of the copper toxicity study is relevant as to Dr. Fives–Taylor's anticipated expert testimony showing a link between bodily use of copper and an increased risk of infection.

These relevancy arguments are not persuasive. The FDA investigation was undertaken to investigate Searle's general research practices and methodology in laboratory studies. It was never intended to be a study of the safety and effectiveness of the Cu–7. Although the report is highly critical of Searle's general conduct between 1968 and 1975, such conduct is not relevant to the issues of this case unless plaintiffs can show that any part of the report makes defendant's liability more probable than not. The examples cited by plaintiffs simply do not make such a showing.

Furthermore, even if the report is arguably relevant to some part of plaintiffs'

case, Fed.R.Evid. 403 dictates that such evidence may be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

Fed.R.Evid. 403, by its very words, requires the Court to conduct a balancing test to determine if otherwise admissible evidence should be excluded at trial. Here, the task force report's relevance is questionable at best. The report documents a general investigation of Searle's research practices. It focuses on only one of the many Cu–7 animal studies Searle conducted. Indeed, the Cu–7 is mentioned only six times in the entire 84-page report. In addition, the FDA decided, subsequent to the report, that Cu–7 research was not compromised by Searle's conduct in the 52–week copper toxicity study. Searle was not required to repeat the questioned study.

The report's minimal probative value is clearly outweighed by its prejudicial impact. It, in no uncertain terms, questioned Searle's integrity, honesty, and commitment to the protection of the public health. Further, it recommended a criminal investigation of Searle's activities. Such language will surely prejudice the factfinder in a way that no cautionary instruction could prevent. Exclusion under Fed.R. Evid. 403 is the only way to ensure a fair trial based on the merits of the case.

Accordingly, this Court grants defendant's motion to the extent that plaintiffs can not use the report in their case-in-chief.[1]

The Court declines to rule, at this time, as to whether plaintiffs can use the report for rebuttal and/or impeachment purposes. Plaintiffs hypothesize several ways in which they could use it for such purposes. For example, conceivably it could be used to rebut defendant's likely assertion that the Cu–7 is a safe and effective drug by virtue of FDA approval. In plaintiffs' view, because the report suggests that Searle continually misrepresented itself to the FDA, it rebuts a presumption that FDA approval means that the Cu–7 is a safe and effective drug.

Alternatively, plaintiffs suggest that the report could be used to impeach any testimony by Searle officials that Searle is a responsible and highly reputable company. Plaintiffs cite a Searle Board Member's deposition testimony to the effect that Searle management "would bend over backwards to—to protect the public," as the type of testimony it would seek to impeach with the FDA report. Deposition of William Anylan, pp. 46–47.

At this point, plaintiffs' musings as to the potential uses for rebuttal or impeachment are but speculation. The Court will wait until trial to determine, in specific contexts, if the task force report can be used for rebuttal and/or impeachment purposes.

### ORDER

Based on the foregoing, and a review of the entire file and record, IT IS HEREBY ORDERED that defendant's motion to exclude the 1976 FDA Task Force Report of Preclinical (Animal) Studies of G.D. Searle Company is granted to the extent that plaintiffs cannot use the report in their case-in-chief.

---

**1.** Because the Court is excluding the report as unduly prejudicial, the Court need not address defendant's additional arguments that the report is also inadmissible as hearsay or improper character evidence.